# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| RAFAEL CAJIGAS, JULIE VOEKS, and VESTA BILLS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiffs,<br>　v.<br><br>STATE COLLECTION SERVICE, INC.,<br><br>　　　　　Defendant. | Case No.: 18-cv-1864<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Rafael Cajigas is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Vesta Bills is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each Plaintiff a debt allegedly incurred for personal, family, or household purposes.

7. Each Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought to collect from each Plaintiff was incurred as a result of a consumer transaction.

8. Defendant State Collection Service, Inc. ("SCS") is a corporation with its principal place of business located at 2509 S. Stoughton Rd., Madison, WI 53716.

9. SCS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

10. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

11. SCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. SCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

### *Cajigas Letter*

12. On or around December 28, 2017, SCS mailed a debt collection letter to Plaintiff Cajigas regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

13. Upon information and belief, the alleged debt listed in Exhibit A was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11,

2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

14. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by a computer, and with the information specific to Plaintiff Cajigas inserted by the computer.

15. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter, used by SCS to attempt to collect alleged debts.

16. Upon information and belief, <u>Exhibit A</u> is the first written communication SCS mailed to Plaintiff Cajigas regarding this alleged debt.

17. <u>Exhibit A</u> includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> **IMPORTANT CONSUMER NOTICE**
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

18. <u>Exhibit A</u> also lists the following details about Plaintiff Cajigas' alleged debt:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| LAKESHORE MEDICAL CLINIC LAYTON | 2241 | 08/03/17 | $11.69 |
| | | Total Amount Due: | $ 11.69 |

19. Above the validation notice, <u>Exhibit A</u> additionally states:

> The past due accounts below have been referred to this office for debt collection. You may pay the total amount due by cash, check, credit card, debit card or money order. If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until after the 30 day validation period described below.

20. The statement "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" represents that that SCS would report the alleged debt to one or more

3

Consumer Reporting Agencies ("CRAs") approximately 30 days after the consumer received Exhibit A.

21. The unsophisticated consumer would understand the statement that SCS would report their alleged debt to CRAs after the expiration of the 30-day validation period to be a threat that the alleged debt would be included on his credit report if he did not pay or dispute it during the validation period.

22. Billing for medical services, which involves several levels of billing based on numerous accounts, providers, and insurers, is extraordinarily complicated and confusing to consumers. *E.g.,* Wisconsin Department of Financial Institutions, "Consumer Protection Fact Sheet – Medical Billing," https://datcp.wi.gov/Pages/Publications/MedicalBilling147.aspx) (accessed on July 31, 2018) ("Be prepared to receive separate bills for physician services such as anesthesiologist, radiologist or surgeon. This means you may receive several billings from just one visit to the hospital or clinic. The bill may even come from a billing department with a different name than your hospital or clinic.").

23. As a result of billing disputes and delays in insurance coverage, medical debt collection items may appear on consumers' credit reports, and negatively impact consumers' creditworthiness.

24. In light of the impact of improper medical debt collection items on consumers' creditworthiness, the office of the Attorney General of the State of New York opened an investigation into the appearance of medical debts on consumers' credit reports.

25. On March 8, 2015, Experian Information Solutions, Inc., Equifax Information Services, LLC, and TransUnion LLC – the three major national Credit Reporting Agencies (collectively "CRAs") entered into a Settlement Agreement with the Attorney General of the

4

State of New York Bureau of Consumer Frauds & Protection pursuant to an Investigation by the Attorney General of the State of New York. A copy of this Settlement Agreement is attached to this Complaint as Exhibit B.

26. Section III.A.3.a of the Settlement Agreement, Exhibit B, provides:

> To allow appropriate time for insurance remediation and clarity on what a consumer's individual payment obligation is for a medical account, the CRAs shall prevent the reporting and display of medical debt identified and furnished by Collection Furnishers when the date of the first delinquency is less than one hundred and eighty (180) days prior to the date that the account is reported to the CRAs.

27. The 180-day waiting period went into effect on September 15, 2017. *See e.g.,* Michelle Andrews "Credit Agencies to Ease Up on Medical Debt Reporting," National Public Radio, https://www.npr.org/sections/health-shots/2017/07/11/536501809/credit-agencies-to-ease-up-on-medical-debt-reporting (published July 11, 2017) ("Starting September 15, the three major credit reporting agencies --- Experian, Equifax and TransUnion --- will set a 180-day waiting period before including medical debt on a consumer's credit report. The six-month period is intended to ensure there's enough time to resolve disputes with insurers and delays in payment.") (accessed November 9, 2018).

28. According to Exhibit A, the "Service Date" for the alleged debt referenced in Exhibit A was August 3, 2017.

29. Upon information and belief, Plaintiff was first billed for the medical services referenced in Exhibit A in September 2017, approximately one month after the medical services were provided.

30. Medical debts are not delinquent when the account is first billed; instead, the debt becomes delinquent if left unpaid for a certain amount of time, usually at least thirty days. *See,*

5

*e.g., Moscona v. Cal. Bus. Bureau, Inc.*, 2011 U.S. Dist. LEXIS 123177, at *5-6 (S.D. Calif. Oct. 24, 2011).

31. Upon information and belief, because the alleged debt referenced in <u>Exhibit A</u> was incurred for medical services provided on August 3, 2017, the date of first delinquency would have been sometime in October 2017.

32. Assuming the date of first delinquency for the alleged debt referenced in <u>Exhibit A</u> was sometime in October 2017, the debt would not have been eligible to appear on a credit report until 180 days after its first delinquency date in October 2017.

33. Assuming the date of first delinquency for the alleged debt referenced in <u>Exhibit A</u> was sometime in October 2017, the debt would not have been eligible to appear on a credit report until sometime in April 2018.

34. As of the date of <u>Exhibit A</u>, the alleged debt referenced in <u>Exhibit A</u> was ineligible to be reported.

35. Assuming <u>Exhibit A</u> was mailed on or about December 28, 2017, the alleged debt referenced in <u>Exhibit A</u> would not have appeared on Plaintiff's credit report at the close of the validation period, sometime in late January 2018 or early February 2018.

36. The statement "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" is thus false, deceptive, and misleading.

37. The Seventh Circuit has held that:

Debt collectors are required to tailor boilerplate language to avoid ambiguity. If they fail to do so, they run the risk of liability. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) (holding that the dunning letter would violate §1692e even if it was 'a form letter'). If they fail to do so, they run the risk of liability. *See id.* ('When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that

6

ambiguity does so at its peril.') (quoting *Gonzales v. Arrow Fin Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011)).

*Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018).

38. Plaintiff Cajigas was misled, deceived, and confused by Exhibits A.

39. The unsophisticated consumer would be misled, deceived, and confused by Exhibits A.

### *Voeks Letter*

40. On or around January 6, 2018, SCS mailed a debt collection letter to Plaintiff Voeks regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit C.

41. Upon information and belief, the alleged debt listed in Exhibit C was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

42. Upon information and belief, Exhibit C is a form letter, generated by a computer, and with the information specific to Plaintiff Voeks inserted by the computer.

43. Upon information and belief, Exhibit C is a form debt collection letter, used by SCS to attempt to collect alleged debts.

44. Upon information and belief, Exhibit C is the first written communication SCS mailed to Plaintiff Voeks regarding this alleged debt.

45. Exhibit C includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

7

**\*\*IMPORTANT CONSUMER NOTICE\*\***

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

46. <u>Exhibit C</u> also lists the following details about Plaintiff Voeks' alleged debt:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| AURORA MEDICAL GROUP FRANKLIN CLINIC | 7185 | 08/07/17 | $8.00 |
| | | Total Amount Due: | $ 8.00 |

47. Above the validation notice, <u>Exhibit C</u> additionally states:

The past due accounts below have been referred to this office for debt collection. You may pay the total amount due by cash, check, credit card, debit card or money order. If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until after the 30 day validation period described below.

48. According to <u>Exhibit C</u>, the "Service Date" for the alleged debt referenced in <u>Exhibit A</u> was August 7, 2017.

49. Upon information and belief, Plaintiff was first billed for the medical services referenced in <u>Exhibit C</u> in September 2017, approximately one month after the medical services were provided.

50. Medical debts are not delinquent when the account is first billed; instead, the debt becomes delinquent if left unpaid for thirty days.

51. Upon information and belief, because the alleged debt referenced in <u>Exhibit C</u> was incurred for medical services provided on August 7, 2017, the date of first delinquency would have been sometime in October 2017.

52. Assuming the date of first delinquency for the alleged debt referenced in <u>Exhibit C</u> was sometime in October 2017, the debt would not have been eligible to appear on a credit report until 180 days after its first delinquency date in October 2017.

8

53. Assuming the date of first delinquency for the alleged debt referenced in Exhibit C was sometime in October 2017, the debt would not have been eligible to appear on a credit report until sometime in April 2018.

54. As of the date of Exhibit C, the alleged debt referenced in Exhibit C was ineligible to be reported.

55. Assuming Exhibit C was mailed on or about January 6, 2017, the alleged debt referenced in Exhibit C would not have appeared on Plaintiff's credit report at the close of the validation period, sometime in early February 2018.

56. The statement "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" is thus false, deceptive, and misleading.

57. The Seventh Circuit has held that:

> Debt collectors are required to tailor boilerplate language to avoid ambiguity. If they fail to do so, they run the risk of liability. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) (holding that the dunning letter would violate §1692e even if it was 'a form letter'). If they fail to do so, they run the risk of liability. *See id.* ('When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril.') (quoting *Gonzales v. Arrow Fin Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011)).

*Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018).

58. The statement "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" is thus false, deceptive, and misleading.

59. Plaintiff Voeks was misled, deceived, and confused by Exhibits C.

60. The unsophisticated consumer would be misled, deceived, and confused by Exhibits C.

*Bills Letter*

61. On or around May 28, 2018, SCS mailed a debt collection letter to Plaintiff Bills regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit D.

62. Upon information and belief, the alleged debt listed in Exhibit D was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

63. Upon information and belief, Exhibit D is a form letter, generated by a computer, and with the information specific to Plaintiff Bills inserted by the computer.

64. Upon information and belief, Exhibit D is a form debt collection letter, used by SCS to attempt to collect alleged debts.

65. Upon information and belief, Exhibit D is the first written communication SCS mailed to Plaintiff Bills regarding this alleged debt.

66. Exhibit D includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

> **\*\*IMPORTANT CONSUMER NOTICE\*\***
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

67. Exhibit D also lists the following details about Plaintiff Bills' alleged debt:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| AURORA QUICKCARE AT WALGREENS-SOUTH MILWAUK██████████0072 | | 02/03/18 | $70.00 |
| | | Total Amount Due: | $ 70.00 |

10

68. Above the validation notice, Exhibit D additionally states:

> The past due accounts below have been referred to this office for debt collection. You may pay the total amount due by cash, check, credit card, debit card or money order. If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until after the 30 day validation period described below.

69. According to Exhibit D, the "Service Date" for the alleged debt referenced in Exhibit D was February 3, 2018.

70. Upon information and belief, Plaintiff was first billed for the medical services referenced in Exhibit D in March 2018, approximately one month after the medical services were provided.

71. Medical debts are not delinquent when the account is first billed; instead, the debt becomes delinquent if left unpaid for thirty days.

72. Upon information and belief, because the alleged debt referenced in Exhibit D was incurred for medical services provided on February 3, 2018, the date of first delinquency would have been sometime in April 2018.

73. Assuming the date of first delinquency for the alleged debt referenced in Exhibit D was sometime in April 2018, the debt would not have been eligible to appear on a credit report until 180 days after its first delinquency date in April 2018.

74. Assuming the date of first delinquency for the alleged debt referenced in Exhibit D was sometime in April 2018, the debt would not have been eligible to appear on a credit report until sometime in October 2018.

75. As of the date of Exhibit D, the alleged debt referenced in Exhibit D was ineligible to be reported.

76. Assuming Exhibit D was mailed on or about May 28, 2018, the alleged debt referenced in Exhibit D would not have appeared on Plaintiff's credit report at the close of the validation period, sometime in late June or early July 2018.

11

77. The statement "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" is thus false, deceptive, and misleading.

78. The Seventh Circuit has held that:

> Debt collectors are required to tailor boilerplate language to avoid ambiguity. If they fail to do so, they run the risk of liability. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) (holding that the dunning letter would violate §1692e even if it was 'a form letter'). If they fail to do so, they run the risk of liability. *See id.* ('When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril.') (quoting *Gonzales v. Arrow Fin Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011)).

*Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018).

79. The statement "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" is thus false, deceptive, and misleading.

80. Plaintiff Bills was misled, deceived, and confused by <u>Exhibits D</u>.

81. The unsophisticated consumer would be misled, deceived, and confused by <u>Exhibits D</u>.

### *The FDCPA*

82. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations

12

of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated*

13

*Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

83. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

84. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

85. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

86. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

87. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## The WCA

88. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

89. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

90. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

91. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

92. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

93. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

15

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

94. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

95. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

96. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

97. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

98. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

99. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

100. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

101. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102. By stating "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below," Exhibits A, C, & D are false, deceptive, and misleading as to whether SCS would be able to report the alleged debts to CRAs.

103. Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT II – WCA

104. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

105. 83. By stating "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below," Exhibits A, C, & D falsely threaten to report Plaintiffs alleged debt.

106. SCS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

17

107. <u>Exhibits A, C, & D</u> otherwise violate the FDCPA.

108. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(g),

## **CLASS ALLEGATIONS**

109. Plaintiffs bring this action on behalf of two Classes.

110. Class I consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by <u>Exhibits A, C, and/or D</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between November 27, 2017 and November 27, 2018, inclusive, (e) in which a "date of service" listed on the letter is less than 180 days prior to the date of the letter, (f) that was not returned by the postal service.

111. Class II consists of (a) all natural persons in the Milwaukee County, (b) who were sent a collection letter in the form represented by <u>Exhibits A, C, and/or D</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between November 27, 2017 and November 27, 2018, inclusive, (e) in which a "date of service" listed on the letter is less than 180 days prior to the date of the letter, (f) that was not returned by the postal service.

112. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

113. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10).

114. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

115. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

116. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

117. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Classes and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 27, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

19